IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 1:25-CV-519

| | | |
|---|---|---|
| CYNTHIA MARIE HAIRSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | COMPLAINT |
| | ) | |
| THE UNIVERSITY OF NORTH | ) | |
| CAROLINA at CHAPEL HILL | ) | |
| | ) | |
| Defendant. | ) | |

NOW COMES plaintiff Cynthia Marie Hairston ("Hairston"), by and through counsel pursuant to Fed. R. Civ. P. 8., complaining against defendant, THE UNVERSITY OF NORTH CAROLINA at Chapel Hill ("UNC-CH"), a body politic and corporate institution of the State of North Carolina, alleges and says as follows:

PARTIES:

1. Hairston is a citizen and resident of Wake County, North Carolina.

2. Defendant UNC-CH is located in Orange County, North Carolina and, at all times relevant herein, has been a body politic and corporate institution of the State of North Carolina, pursuant to N.C. Gen. Stat. § 116-4, *et seq*. As such, UNC-CH is a State institution that is empowered to sue and be sued.

3. At all times relevant herein, UNC-CH has been an entity engaged in an industry affecting commerce, pursuant to 42 U.S.C. § 2000e(b), by providing educational and healthcare services to citizens throughout North Carolina and the United States.

4. At all times relevant herein, UNC-CH has had five hundred (500) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and is an "employer" under 42 U.S.C. § 2000e(b).

5. At all times relevant herein, UNC-CH's managers and employees, as referenced herein, were acting within the scope of their employment for the actions against Hairston and/or UNC-CH has authorized or ratified the actions of its employees, as alleged herein. As such, UNC-CH is vicariously liable for all acts and omissions of its managers and employees.

## JURISDICTION AND VENUE:

6. This action alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in the Middle District of North Carolina, which is the judicial district in which UNC-CH is located and where a substantial part of the events or omissions giving rise to the claims occurred.

## ADMINISTRATIVE REMEDIES:

8. On March 8, 2024, and within 180 days of being subjected to Defendants' discriminatory and retaliatory employment action, as alleged herein, Hairston filed a charge of discrimination (Charge No: 433-2024-01741) against UNC-CH with the

United States Equal Employment Opportunity Commission ("EEOC") alleging illegal retaliation and discrimination, pursuant to 42 U.S.C. § 2000e et seq.

9. On March 28, 2025, the EEOC issued Hairston a notice of right to sue regarding the above-referenced charge.

10. Within 90 days after having first received the referenced notice of right to sue from the EEOC, Hairston filed this action for illegal retaliation and discrimination with the Court, pursuant to 42 U.S.C. § 2000e et seq.

11. Pursuant to 42 U.S.C. § 2000e et seq., Hairston has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

FACTS:

12. On September 19, 2022, Hairston, a Black female, was hired by UNC-CH as a background check specialist.

13. Prior to her employment with UNC-CH, Hairston had worked with the United States Department of Commerce for the Census Investigative services.

14. For Hairston's six-month review at UNC-CH, Hairston was reported to be performing "exceptionally well." Hairston continued to perform at this same level until the end of her employment with UNC-CH.

15. In April 2023, Hairston reported to her immediate supervisor that she had observed an inappropriate comment made by KP, a white male co-worker, to a black female co-worker in a group chat. KP was also a background specialist and performed the same duties as Hairston. Hairston's immediate supervisor, a black

3

female, stated that the comment might constitute a form of subtle racism and filed a complaint with UNC's Equal Opportunity and Compliance Office ("EOC").

16. On or about July 13, 2023, the EOC interviewed Hairston as part of its investigation of the incident. The purpose of the investigation was to determine whether KP's statement could be construed as racist.

17. After the filing of the EOC complaint, Hairston's immediate supervisor gave her a "heads-up" that a potential issue may arise with KP because he was informed that Hairston was the one who brought his comment to the supervisor's attention.

18. On information and belief, Ceresa Aberg ("Aberg"), Hairston's unit manager who is a white female, was informed of Hairston's role and participation in the EOC investigation at some point after the conclusion of the investigation but prior to the decision to terminate Hairston. At all relevant times herein, Aberg was the supervisor of Hairston's immediate supervisor, and as such, Hairston's supervisor would have discussed any investigations regarding the team with Aberg.

19. On September 13, 2023, Hairston was participating in an MS team chat involving KP and another co-worker. When Hairston was explaining how some aspects of her experience with the federal government were different from how UNC handled matters, KP cut her off and said, "Well, that's something you should take up with management." KP then abruptly disconnected Hairston from the meeting and would not permit her to rejoin the meeting.

4

20. On information and belief, KP reported the incident to Aberg and falsely claimed to Aberg that, among other things, Hairston stated that she was upset with the assignment and that Hairston refused to provide any feedback to her team members.

21. Aberg and Hairston's immediate supervisor subsequently met with Hairston and only asked her two questions: (1) "Did the September 13th meeting get heated?" and (2) "Did you ask to leave the meeting?" Hairston truthfully answered "no" to both questions and clarified that she was kicked out of the meeting by KP.

22. On information and belief, Aberg conducted a biased investigation into who was responsible for the incident on September 13, 2023, treating KP preferentially because of his race. Aberg accepted KP's account of the incident without question while conducting only a cursory interview of Hairston.

23. On September 15, 2023, Aberg informed Hairston via an MS teams meeting that her employment with UNC-CH was being terminated. On information and belief, it was Aberg's decision to terminate Hairston. Aberg directed Hairston's immediate supervisor to issue a formal termination letter to Hairston which was issued that same day.

24. On information and belief, no disciplinary or adverse employment action was taken against KP for his role in the incident.

25. On information and belief, Aberg's biased investigation and her decision to terminate Hairston were based on Hairston's race.

5

26. Additionally and alternately, Aberg's biased investigation and decision to terminate Hairston were based on Hairston's participation in the EOC investigation.

27. The termination on September 15, 2023, occurred one business day prior to the end of Hairston's probationary period at which time she could not have been suspended, demoted, or dismissed without just cause pursuant to N.C. Gen. Stat. § 126-35.

28. On information and belief, Aberg subsequently placed Hairston on a "hire exclusion list" which prevents Hairston from being hired for any position within the University of North Carolina system.

## FIRST CLAIM FOR RELEF
### (Title VII Racial Discrimination)

29. Hairston re-alleges and incorporates herein by reference the preceding allegations.

30. Hairston is a member of a protected class pursuant to Title VII.

31. During her entire employment with UNC, Hairston performed her job as a background specialist at a satisfactory level.

32. On information and belief, Aberg conducted a racially biased investigation of the incident occurring on September 13, 2023, as she had predetermined that Hairston was the party at fault based on her race and that KP was the innocent party because he was white.

33. On information and belief, Aberg's actions against Hairston were motivated by a discriminatory animus because of Hairston's race which resulted in Aberg's disparate treatment of Hairston and in Hairston's termination.

34. Aberg's foregoing actions were undertaken in the course and scope of her employment with UNC-CH.

35. As a direct and proximate result of UNC-CH's adverse employment actions because of race against Hairston, as alleged herein, Hairston has suffered and will continue to suffer harms, losses, and damages, including without limitation pecuniary losses of lost salary and benefits, and diminished earning capacity along with non-pecuniary losses of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other damages in an amount to be determined at trial, but in excess of $25,000.00.

### SECOND CLAIM FOR RELEF
### (Title VII Retaliation)

36. Hairston re-alleges and incorporates herein by reference the preceding allegations.

37. Hairston's role and involvement in the EOC investigation constituted a protected activity under Title VII.

38. Aberg was informed of Hairston's role and involvement in the EOC investigation prior to the time of her decision to terminate Hairston.

39. On information and belief, Aberg terminated Hairston's employment with UNC-CH in retaliation for Hairston's participation in the EOC investigation in violation of Title VII.

7

40. In retaliating against Hairston for her participation in a protected activity under Title VII, Aberg was acting in the course and scope of her employment with UNC-CH.

41. As a direct and proximate result of Defendant's retaliation against Hairston, as alleged herein, Hairston has suffered and will continue to suffer harms, losses, and damages, including without limitation pecuniary losses of lost salary and benefits, and diminished earning capacity along with non-pecuniary losses of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other damages in an amount to be determined at trial, but in excess of $25,000.00.

PRAYER FOR RELIEF:

WHEREFORE, Hairston prays unto the Court as follows:

1. That the Court grant the following equitable relief:
   A. UNC-CH reinstate Hairston to her former position;
   B. UNC-CH reimburse Hairston for all back pay and benefits;
   C. UNC-CH remove from any personnel file or other records pertaining to Hairston that state or otherwise reference that at any time she had been terminated or otherwise subjected to any disciplinary action pertaining to her termination or engaged in any wrongdoing while employed by UNC-CH.
2. That Hairston receive judgment against UNC-CH in an amount to be determined at trial, but in excess of $25,000 for all applicable

8

compensatory damages for pecuniary and non-pecuniary harms, losses, and damages, including without limitation that for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, damage to reputation, and any other applicable damages under 42 U.S.C. § 2000e-5(g) and (k), and common law;

3. That Hairston recover from UNC-CH all prejudgment and post-judgment interest and court costs, including without limitation expert witness fees, deposition costs, and attorneys' fees, pursuant to 42 U.S.C. § 2000e-5(k), and as permitted by law;

4. That Hairston receive a jury trial as to all matters so triable; and

5. That the Court grant Hairston such other and further relief as the Court deems just and proper.

This the 26th day of June, 2025.

BAILEY & DIXON, LLP

By: *s/ Philip A. Collins*
 Philip A. Collins
NC State Bar No. 29153
434 Fayetteville Street, Suite 2500
Raleigh, North Carolina 27601
Telephone: (919) 828-0731
Email: ncollins@bdixon.com
Attorney for Plaintiff