IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CYNTHIA MARIE HAIRSTON,       )
                              )
            Plaintiff,        )
                              )
    v.                        )            1:25CV519
                              )
THE UNIVERSITY OF NORTH       )
CAROLINA AT CHAPEL HILL,      )
                              )
            Defendant.        )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This is an employment discrimination case. Before the court is the motion to dismiss the amended complaint by Defendant University of North Carolina at Chapel Hill ("UNC") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Doc. 13.) The motion is fully briefed and ready for decision. (Docs. 15, 16, 17.) For the reasons set forth below, the motion will be granted in part and denied in part.

**I. BACKGROUND**

The allegations in the amended complaint (Doc. 11), viewed in the light most favorable to Cynthia Marie Hairston as non-movant, show the following:

Hairston, a black woman, was hired by UNC as a background check specialist on September 19, 2022. (Id. ¶ 12.) Her six-month review described her as performing "exceptionally well," and she continued to perform at the same level until her termination.

(Id. ¶ 14.)  In April 2023, Hairston told her immediate supervisor, Karressa Overbey, a black female, that she had observed "KP," a white male co-worker, make an inappropriate comment to a black female co-worker in a group chat.  (Id. ¶ 15.)  Overbey said that the comment might constitute a form of subtle racism and filed a complaint with UNC's Equal Opportunity and Compliance Office ("EOC").  (Id.)

On July 13, 2023, the EOC interviewed Hairston as part of its investigation to determine whether KP's statement could be construed as racist.  (Id. ¶ 16.)  After the EOC complaint was filed, Overbey warned Hairston that KP knew that Hairston was the person who had reported his comment.  (Id. ¶ 17.)  After the conclusion of the July EOC investigation, Ceresa Aberg, a white woman who is Overbey's immediate supervisor, was informed of the investigation and Hairston's role in it.  (Id. ¶18.)

On September 13, 2023, Hairston participated in a virtual meeting with KP and another co-worker.  (Id. ¶ 19.)  During the meeting, KP interrupted Hairston while she was speaking, disconnected her from the meeting, and would not let her rejoin. (Id.)  KP then falsely reported to Aberg that Hairston had been upset about the assignment and that she had refused to provide feedback to her team members.  (Id. ¶ 20.)  Aberg and Overbey subsequently met with Hairston and asked her only two questions: whether the September 13 meeting had gotten "heated" and whether

2

Hairston had asked to leave the meeting. (Id. ¶ 21.) Hairston replied "no" to both questions and said that she had been ejected from the meeting by KP. (Id.)

On September 15, 2023, Aberg informed Hairston that her employment with UNC was being terminated. (Id. ¶ 23.) The stated basis for Hairston's termination was KP's false allegations regarding her interactions with him and others in the workplace. (Id.) Hairston was terminated one business day before the completion of her probationary period at UNC and placed on a "hire exclusion list," which prevents her from being hired for any position within the UNC system. (Id. ¶ 27-28.) No disciplinary action was taken against KP for his role in the incident. (Id. ¶ 24.) Hairston alleges that Aberg was biased in her investigation of the virtual meeting incident and treated KP preferentially because of his race. (Id. ¶ 22.) She further alleges that Aberg's decision to terminate her employment was based on her race, or alternatively on Hairston's participation in the July EOC investigation. (Id. ¶¶ 25-26.)

Based on the foregoing, Hairston asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., for racial discrimination (Count 1) and retaliation (Count 2). (Id. ¶¶ 29-41.) She also asserts a claim under section 143-422.2 of the North Carolina General Statutes for wrongful discharge in violation of public policy (Count 3). (Id. ¶¶ 42-46.)

3

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### B. Title VII Racial Discrimination (Count 1)

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any

4

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). Absent direct evidence of discrimination, the elements of a prima facie case of discrimination under Title VII are (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Ct. of Appeals of Md., 566 U.S. 30 (2012). A plaintiff need not plead facts constituting a prima facie case in order to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (2007); see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

UNC does not challenge Hairston's membership in a protected class or the fact that her termination constitutes an adverse employment action. Rather, it argues that Hairston has failed to state a claim for racial discrimination because she has not plausibly alleged that her job performance was satisfactory or that she was treated differently from similarly situated employees who were not black. (Doc. 15 at 5-8.) Hairston responds that she has adequately pled both elements. (Doc. 16 at 4-6.) UNC replies that her allegations of satisfactory performance are "conclusory"

5

and unsupported by facts and that she has failed to allege that KP was similarly situated "in all relevant respects" or that he was treated differently than Hairston. (Doc. 17 at 2-4.)

UNC acknowledges that at this stage Hairston is not required to plead facts that constitute a prima facie case. (Doc. 15 at 6 (quoting Coleman, 626 F.3d at 190.) It contends that Hairston has failed to plead factual allegations that raise a right to relief above a speculative level.

Hairston's amended complaint no doubt tests the limits of plausibility. Her allegation of satisfactory job performance relies on her six-month review at UNC, which described her as performing "exceptionally well." (Doc. 11 ¶ 14.) Her allegation that she "continued to perform at this same level" until the end of her employment (id.), while bare of additional facts, is tethered to a factual claim and therefore is sufficient at this early pleading stage.

So, too, does Hairston's allegation that KP was similarly situated narrowly state a plausible claim. Specifically, Hairston alleges that "KP was also a background specialist [like Hairston] and performed the same duties as Hairston," and that they shared the same immediate supervisor. (Id. ¶ 15.) To this extent, Hairston's allegations show similarity in job responsibilities. UNC argues, however, that Hairston and KP were not "similarly situated" with regard to the investigation of the September 13

6

incident because KP reported Hairston to Aberg for alleged misconduct. (Doc. 17 at 3 (citing Sheppard v. Visitors of Virginia State Univ., 993 F.3d 230, 237 (4th Cir. 2021).) However, Sheppard, on which UNC relies, is factually inapposite. In that case, the court of appeals found that the plaintiff was not similarly situated to his accusers when he was charged with assault, while his accusers were only charged with larceny. See Sheppard, 993 F.3d at 237. Here, Hairston and KP were both involved in the same incident where each blamed the other for Hairston's exclusion from a meeting. Hairston alleges that Aberg and thus UNC treated KP more favorably, ultimately terminating Hairston. (See Doc. 1 ¶¶ 19-21.) Thus, at this stage Hairston has adequately alleged that she and KP are similarly situated in relevant respects.

Regarding differential treatment, Hairston alleges that Aberg "treat[ed] KP preferentially" in her investigation and "accepted KP's account of the [September 13] incident" over her own after only a cursory interview with Hairston. (Id. ¶ 22.) UNC argues that there are no facts alleged to suggest that Aberg believed KP's version of events over Hairston's based on race. (Doc. 15 at 7). But to allege a plausible prima facie case, Hairston need only allege treatment disparate from someone outside the protected class, which she has. Moreover, to the extent UNC's challenge amounts to an argument that Aberg had legitimate, non-

discriminatory reasons for believing KP over Hairston, it is premature. "Generally, an employer's legitimate, non-discriminatory reason cannot be established from the face of the complaint, and the court's inquiry at [the motion to dismiss] stage is merely whether an alternative, non-discriminatory explanation renders the allegations implausible." Blakney v. North Carolina A&T State University, No. 17CV874, 2019 WL 1284006, at *19 (M.D.N.C. Mar. 20, 2019) (citing Woods v. City of Greensboro, 855 F.3d 639, 650-52 (4th Cir. 2017)). Doubtless, many non-discriminatory reasons could explain why Aberg sided with KP over Hairston. But none is so obvious on the face of the complaint as to render Hairston's allegation that Aberg was motivated by race implausible. At this stage, therefore, Hairston has sufficiently alleged that she suffered disparate treatment compared to KP.

## C. Title VII Retaliation (Count 2)

Title VII also prohibits employers from "discriminat[ing] against any of [their] employees ... because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] ... participated in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e-3(a). The elements of a prima facie retaliation claim under Title VII are (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman, 626 F.3d at 190.

8

UNC accepts the first two elements for purposes of its motion. But it argues that Hairston has not plausibly alleged a causal link between her September termination and her participation in the July EOC investigation because the events were not temporally proximate. (Doc. 15 at 8-10 (citing Roberts v. Glenn Industrial Grp., 998 F.3d 111, 127 (4th Cir. 2021).) UNC further argues that the inference of causation is implausible when the July EOC investigation was initiated by Hairston's supervisors. (Id. at 10-11.) Hairston responds that an interval of less than two months is sufficiently proximate in time to support an inference of causation, particularly at the pleadings stage. (Doc. 16 at 7-8 (citing cases).) She further argues that the expiration of her one-year probationary period was a natural point to issue a termination notice, retaliatory or otherwise. (Id. at 8-9.) Additionally, she notes that the EOC investigation was only initiated by Overbey, not by Aberg, while the latter was the supervisor responsible for her termination. (Id. at 5-6.) UNC replies that Hairston has not plausibly alleged that Aberg was aware of the EOC investigation when she terminated Hairston's employment, that an interval of two months is too long to infer causation without additional evidence, and that the expiration of Hairston's probationary period is irrelevant. (Doc. 17 at 4-7.)

As Hairston notes, the cases UNC cites to argue that the time interval of two months is insufficient were decided at summary

9

judgment. (Doc. 16 at 8; see Roberts, 998 F.3d at 126-27 (collecting cases).) On a motion to dismiss, however, the court must draw all reasonable inferences in the plaintiff's favor. Ibarra, 120 F.3d at 474. Establishing a causal relationship at the prima facie state "is not an onerous burden." Roberts, 998 F.3d at 127 (quoting Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018)). In fact, "[v]ery little evidence of a causal connection is required." Id. (quoting Burgess v. Bowen, 466 F. App'x 272, 283 (4th Cir. 2012)).

Here, the allegations of the amended complaint support a reasonable inference that Hairston's termination was causally linked to her participation in the July EOC investigation. They also support a reasonable inference that Aberg, as Overbey's "immediate supervisor," was made aware of the July EOC investigation initiated by Overbey. That Aberg's knowledge is alleged on information and belief is not preclusive because Aberg is Overbey's supervisor and Hairston would not have access to Aberg's state of knowledge at this early stage. Thus, Hairston's allegation of temporal proximity is coupled by additional facts that are sufficient at this early stage, and UNC's motion to dismiss the retaliation claim will be denied.

**D.   North Carolina Wrongful Discharge Claim (Count 3)**

UNC argues that the Eleventh Amendment to the United States Constitution bars Hairston's wrongful discharge claim under § 143-

10

422.2 of the North Carolina General Statutes.  (Doc. 15 at 11-12.) In response, Hairston expressly withdraws this claim.  (Doc. 16 at 9.)  Thus, Count 3 of the amended complaint will be dismissed.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendant UNC's motion to dismiss (Doc. 13) is GRANTED with respect to Count 3 of the amended complaint and DENIED as to Counts 1 and 2.

/s/    Thomas D. Schroeder
April 20, 2026          United States District Judge

11